| | |
|---|---|
| JAMES MARSHALL HOPPER, ) <br> ) <br> Plaintiff, ) <br> ) <br> ) <br> v. ) <br> ) <br> ) <br> ERIC LOGSDON, ROBERT MONROW, ) <br> JEFF SHARPE, DONNIE SHIPLEY, ) <br> MIKE BUTCHER, EARL LOY JR., ) <br> MAYNARDVILLE CITY POLICE ) <br> DEPARTMENT, BILLY BREEDING, AND ) <br> UNION COUNTY POLICE DEPARTMENT, ) <br> ) <br> Defendants. ) | No. 3:15-CV-00154 <br> REEVES/GUYTON |

## MEMORANDUM OPINION

Plaintiff, James Marshall Hopper, acting *pro se,* filed this action against defendants alleging excessive force during his arrest and denial of medical care for his injuries. Defendants have moved for summary judgment on all claims. Hopper has failed to respond to defendant's motions. Because Hopper did not respond to defendants' specific arguments raised in the motions for summary judgment, he has waived any opposition to the relief sought. *See* Local Rule 7.2. After review of the record in this case, the court agrees that this action should be dismissed in its entirety, and defendants' motions will be granted.

# I. Background

On April 20, 2014, officers were dispatched to Hopper's residence in Corryton, Tennessee on a domestic assault call. Officers were informed by dispatch that the male aggressor was intoxicated and holding or pointing a gun at a female victim. When officers arrived at the residence, all of the lights in the residence were turned off and there was no outside light.

Hopper came out onto the back porch and appeared to be holding something in one of his hands. As officers approached Hopper, they gave commands for him to show his hands and to lay down on the porch. Hopper refused to obey the commands and ran back into the residence. Officer Logsdon called for assistance from other officers.

After a few minutes, Hopper came back out onto the porch. Officers again gave commands for him to show his hands and to lie down on the porch, and Hopper again refused to comply. Because Hopper failed to respond to the officers' commands, Officer Sharpe approached him from behind and physically took Hopper to the ground. After being taken to the ground, Hopper struggled and refused to cooperate as officers attempted to handcuff him. Officer Logsdon put his foot on Hopper's back to assist officers in handcuffing Hopper.

After Hopper was handcuffed, Officer Logsdon entered the residence and located Myrna Hopper in the bathroom. The door to the bathroom was shut and Mrs. Hopper had been laying against the bottom of the door to prevent her husband from entering. Mrs. Hopper informed Officer Logsdon her husband had thrown her out of the residence earlier

in the day and she came back to get a coat after it turned dark. Mrs. Hopper and her husband started arguing, and he grabbed her by the throat and the arm. She got away from her husband and ran outside but he followed her, holding a flashlight and a pistol. Mrs. Hopper then ran back into the residence and into the bathroom, where she called 911. She told Officer Logsdon that her husband noticed that she was on the phone and unplugged the phone from the wall.

The Luttrell Volunteer Fire Department and Union County Ambulance were also dispatched to the Hopper residence. Hopper was checked for injuries and diagnosed with a cut on his left ear. Hopper was arrested for aggravated domestic assault and resisting arrest and transported in Officer Sharpe's car to the Union County Jail. Hopper later pled guilty to assault and disorderly conduct.

Hopper's complaint, as amended, alleges that during his takedown and arrest, officers kicked him in the ribs and slammed his head onto the porch several times. Hopper further alleges he was bleeding profusely from his head and was going in and out of consciousness. Although paramedics were on the scene, Hopper alleges that the officers refused to allow them to examine or treat his injuries. Hopper further alleges that his family gave the officers Hopper's medications, but officers refused to give him any of the medications when he requested them. Last, Hopper alleges that after his family bailed him out of jail the next day, he went to UT Hospital and was examined and diagnosed with a head concussion, contusions to his ribs, hand and back, and blunt trauma to his chest.

3

## II. Standard for Summary Judgment

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 330 n. 2 (1986); *Moore v. Philip Morris Co., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and inferences to be drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. Ltd v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Burchett v. Keifer*, 301 F.3d 937, 942 (6th Cir. 2002).

Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. *Celotex*, 477 U.S. at 317. To establish a genuine issue as to the existence of a particular element, the nonmoving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Id.* at 250. The court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the court search the record "to establish that it is bereft of a genuine issue of fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.

1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

### III.  Maynardville Police Department

Defendant Maynardville Police Department moves for summary judgment stating that no employees or officers of the City of Maynardville participated in the seizure or arrest of Hopper. Defendant attaches the Affidavit of Roger Richardson, Chief of Police with the Maynardville Police Department. Chief Richardson states that no officers or employees of the City of Maynardville or the Maynardville Police Department were dispatched or responded to the Hopper residence on the evening of April 20, 2014.

Hopper's complaint refers to an officer named "Robert Monroe," a Maynardville City Police Officer. However, Chief Richardson states the City of Maynardville did not employ an officer by the name of "Robert Monroe" in April of 2014. As shown on the arrest warrant, Officer Monroe was actually employed by the Union County Sheriff's Department, not the Maynardville City Police Department.

One of the officers mentioned in Hopper's complaint is an "Officer Shipley." The City did employ an officer named Donnie Shipley in April of 2014, but Officer Shipley was not working the evening of April 20, 2014. Dispatch records show that Officer Shipley was not dispatched to the Hopper residence and his timecard does not reflect that Officer Shipley was even on duty on April 20, 2014.

5

Last, the Maynardville Police Department is not an entity capable of being sued. The police department is a division of the municipal corporation City of Maynardville. Under Tennessee law, a city police department does not have the capacity to sue or be sued. *Alexander v. Beales Street Blues Co. Inc.,* 108 F.Supp.2d 934, 947 (W.D.Tenn. 1999). Thus the Maynardville City Police Department is not a suable entity. In addition, because no officers or employees of the City of Maynardville were at the Hopper residence or participated in his arrest, the court finds that the City of Maynardville is entitled to summary judgment as a matter of law. Accordingly, the claims against the City of Maynardville are **DISMISSED.**

### IV. Officers Mike Butcher, Earl Loy Jr., and Billy Breeding

Although Hopper lists Officers Butcher, Loy and Breeding in the caption of his complaint, Hopper makes no factual allegations whatsoever regarding these officers. Therefore, the court finds these defendants are entitled to summary judgment as a matter of law. *See Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) (dismissing plaintiff's claims where the plaintiff failed to allege defendants committed any actual acts, or averred that they acquiesced in the conduct of their employees). Accordingly, all claims against Mike Butcher, Earl Loy Jr., and Billy Breeding are **DISMISSED.**

### V. Excessive Force

Hopper's complaint alleges that officers used excessive force when they seized and arrested him. Hopper alleges that "one officer" shined a flashlight in his eyes; that "someone" jumped on his back; "they" kicked him; slammed his head into the porch; and

6

"they" put him in a police cruiser." Defendants respond that the force used against Hopper was reasonable under the circumstances and in support of their response have submitted an Affidavit from Eric Logsdon, and records from the Union County Sheriff's Department documenting the incident at the Hopper residence.

The Fourth Amendment guarantees the right against unreasonable search and seizure; however, the Supreme Court has long held that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Grawey v. Drury,* 567 F.3d 302, 309 (6th Cir. 2009). The reasonableness of the seizure cannot be weighed mechanically or precisely defined; instead courts weighing the reasonableness of an officer's actions must carefully consider the facts and circumstances of each particular case, including the severity of the crime at issue, the danger posed by the suspect, and whether the suspect is actively resisting arrest or attempting to flee. *Id.* Finally, "the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham v. Connor,* 490 U.S. 386, 396-97.

First, the officers were dispatched to Hopper's residence in response to a domestic disturbance involving a firearm, clearly a serious crime. Second, officers were informed that Hopper was armed and was threatening the victim. Third, it was dark when officers arrived at the residence, and Hopper re-entered the residence, and was holding something in his hand when he re-emerged from the residence. Thus, it was reasonable for the officers

7

to believe that Hopper was still armed and posed a threat to the safety of the victim and the officers. It was certainly reasonable for Officer Sharpe to circle around Hopper and take him to the ground. Fourth, because Hopper continued to struggle while on the ground, Officer Logsdon assisted Officer Sharpe by exerting pressure on Hopper's back to keep him on the ground to prevent him from further resisting. Because Hopper presented a threat to the safety of officers and was actively resisting the officers' attempts to restrain/disarm him, no reasonable jury could find that the force used against Hopper was excessive.

Hopper alleges that after he was taken to the ground, he was repeatedly kicked in the head, ribs and chest; and that he was bleeding profusely. Hopper also alleges that although paramedics were present on the scene, officers refused to allow him to be examined or treated for his injuries. Unfortunately for Hopper, the record does not support his allegations. Defendants submitted a report from the Union County EMS which responded to the 911 call at the Hopper residence. The report establishes that Hopper was examined by paramedics prior to being transported to jail. Further, contrary to Hopper's allegation that he was in and out of consciousness, paramedics noted that he was "alert and oriented to person, place, time and event." Other than a "scratch" on his ear, Hopper's head, eyes, nose and throat were within normal limits. Hopper denied any further pain or injury to the paramedics. The scratch on his ear was treated by paramedics and Hopper was turned over to Officer Logsdon for transport. To establish a genuine issue as to the existence of a particular element, plaintiff must point to evidence in the record upon which a reasonable finder of fact could find in his favor. *Liberty Lobby,* 477 U.S. at 248. Plaintiff

has not pointed to any evidence in the record to establish the existence of disputed facts. Moreover, although Hopper alleges he was examined and treated at UT Hospital, he has not produced any medical records to support his allegations. Accordingly, the undisputed facts established by defendants support their assertions that the force used during Hopper's arrest was reasonable under the circumstances. Accordingly, defendants' motion for summary judgment will be granted with respect to his claim for excessive force.

## VI. Deliberate Indifference to Medical Needs

Hopper alleges that officers failed to obtain medical treatment for his injuries and failed to administer his medication when he requested.

Under the Eighth Amendment, prison officials are prohibited from "unnecessarily and wantonly inflicting pain on an inmate by acting with deliberate indifference toward the inmate's serious medical needs." *Blackmore v. Kalamazoo County,* 390 F.3d 890, 895 (6th Cir. 2004). Pretrial detainees are protected analogously under the Due Process Clause of the Fourteenth Amendment. *Id.* In order to establish an Eighth Amendment violation for deliberate indifference to serious medical need against a prison official under § 1983, the plaintiff must satisfy an objective and a subjective component. *Id.*

To satisfy the objective component, a plaintiff must show the existence of a sufficiently serious medical need, meaning he is "incarcerated under conditions posing a substantial risk of serious harm." *Id.* A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash,* 539

9

F.3d 510, 518 (6th Cir. 2008).

The subjective component is met when "the official knows of and disregards an excessive risk to inmate health or safety." *Harrison,* 539 F.3d at 518. An official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

Based on the record, the court finds that Hopper has failed to establish either prong of the deliberate indifference test. He has not asserted that his injuries or need for medical care were obvious to a lay person. The EMS record shows that Hopper had only a scratch on his ear, and not the injuries Hopper alleges he suffered during his arrest. Hopper alleges he suffered injuries for which he sought treatment at the emergency room after his release from custody and that defendants refused to give him medication despite his request. He states no facts indicating when or where he requested medical treatment; nor does he state what, if any, information he gave the officers about the extent of his injuries or the potential consequences that may result if he was not given medication. Hopper has failed to submit any evidence to support his claim, such as medical records from UT Hospital. Accordingly, the medical deliberate indifference claim is **DISMISSED** as to all defendants.

## VII.  Union County Sheriff's Department

Like the Maynardville City Police Department, the Union County Sheriff's Department is not a suable entity. *See Petty v. Cnty of Franklin, Ohio,* 478 F.3d 341, 345 (6th Cir. 2007) (sheriff's office is not a legal entity that can be sued under § 1983). Moreover, Hopper has failed to state a claim for municipal liability against Union County.

10

A municipality cannot be found liable under § 1983 unless a plaintiff can establish that an officially executed policy or the tolerance of a custom leads to, causes, or results in the deprivation of a constitutionally protected right. *Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658, 691 (1988). A municipal custom may be established by proof of the knowledge of policymaking officials and their acquiescence in established practice. *Miller v. Calhoun Cnty.,* 408 F.3d 803, 814 (6th Cir. 2005). *Monell* liability requires a showing that the custom is "so permanent and well settled as to constitute a custom or usage with the force of law." *Id.* A plaintiff must establish four factors to support a municipal liability claim: (1) the existence of clear and persistent pattern of mistreatment of detainees; (2) notice or constructive notice on the part of the county; (3) the county's tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and (4) the county's custom was the moving force or direct causal link in the constitutional deprivation. *Miller*, 408 F.3d at 815.

Here, Hopper has failed to submit evidence to satisfy these four factors. He has not shown a clear and persistent pattern of mistreatment of detainees; has shown no notice on the part of Union County, nor that the County approved of any unconstitutional conduct; and he has failed to show any custom or policy of Union County that resulted in a deprivation of his constitutional rights. To establish a genuine issue as to the existence of a particular element, plaintiff must point to evidence in the record upon which a reasonable finder of fact could find in his favor. *Liberty Lobby,* 477 U.S. at 248. Plaintiff has not

11

pointed to any evidence in the record to establish the existence of disputed facts. Accordingly, all claims against Union County are **DISMISSED.**

### VIII.  Conclusion

Because Hopper has failed to respond to defendants' motions for summary judgment and has failed to submit any evidence in support of his allegations, the court finds that defendants are entitled to summary judgment as a matter of law on all claims. Accordingly, defendants' motions [R. 44, 47] are **GRANTED**, and this action is **DISMISSED in its entirety, with prejudice.**  In light of the court's ruling on the motions for summary judgment, it is not necessary to address defendants' motions to dismiss and the motions to dismiss [R. 19, 36, 40, 42] are **DENIED as moot.**

*/s/ Pamela L. Reeves*
**UNITED STATES DISTRICT JUDGE**